UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:19 CR 1015 HEA |
| | ) | |
| KEITH HAYES, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Currently before the Court is Defendant Keith Hayes' Motion to Suppress Statements and Evidence.  [ECF No. 22; hereinafter "Motion to Suppress"]  The government opposes the motion.  Pretrial motions were referred to the undersigned United States Magistrate Judge.  See 28 U.S.C. § 636(b).

**PROCECURAL BACKGROUND**

Hayes is charged by Indictment with being a previously convicted felon in possession of a firearm.  The charge flows from a police encounter during the early morning of September 10, 2019.  Hayes had his initial appearance in late December 2019; the Court appointed CJA Attorney JoAnn Trog to represent him.  On February 7, 2020, counsel filed the instant Motion to Suppress.  The Court set an evidentiary hearing for March 26, 2020.  The evidentiary hearing was postponed numerous times due to the Coronavirus pandemic.  The hearing was eventually held on February 3, 2021.  Hayes appeared in person with Ms. Trog.  Assistant U.S. Attorney Jason Dunkel represented the government.  The government presented the testimony of Police Officer Gregory Schaffer and introduced several exhibits.  [See ECF Nos. 52, 53]

At the conclusion of the February 3rd evidentiary hearing, Ms. Trog asked the Court to hold the record open for 30 days so that she might locate an additional witness.  The record was held open, but no witness ever materialized.  This situation resulted in apparent friction between counsel and Hayes.  Hayes filed some pro se motions and pleadings and the Court eventually determined that it was necessary to appoint new counsel for Hayes and to permit Ms. Trog to withdraw.  CJA Attorney John Lynch entered his appearance on April 12, 2021, and the Court set a follow-up evidentiary hearing for June 11, 2021, which was intended to give Hayes time to locate his witness.  On June 10, 2021, Mr. Lynch filed a Response to the Court noting that he had conferred with Hayes and that Hayes no longer wanted to present any evidence or testimony.  Mr. Lynch asked the Court to decide the pending motion based on the existing record.

Based on the testimony and evidence from the evidentiary hearing, having had the opportunity to observe the demeanor and evaluate the credibility of the witness, having carefully reviewed the exhibits, and having fully considered the parties' arguments and written submissions, the undersigned makes the following findings of fact, conclusions of law, and recommendations.

## **FINDINGS OF FACT**

Gregory Schaffer is an officer with the St. Louis Metropolitan Police Department ("SLMPD") with about eleven years of experience.  Officer Schaffer has been assigned to the Sixth District in St. Louis for his entire career.  His duties include patrolling the area, writing reports, identifying suspicious activity, and answering radio assignments.  Officer Schaffer regularly patrols the same areas of St. Louis, including the area around the 5900 block of Natural Bridge Road.

On September 10, 2019, Officer Schaffer was working the 11:00 p.m. to 7 a.m. shift.  He

was patrolling the Mark Twain I-70 industrial area with his partner, Officer Stephen Ortinau. The officers were in a marked police vehicle, with Officer Ortinau driving. Shortly before 2:00 a.m., Officer Ortinau noticed four people crouched near what appeared to be an air conditioning unit at the Goody Goody Diner, located at the corner of Natural Bridge Rd. and Hamilton Ave. At the time, the Goody Goody Diner was closed for renovations. There were no cars in the lot, but there were streetlights in the area. Officer Schaffer testified that the officers were not equipped with body cameras and their vehicle did not have a dash camera.

The officers drove past the diner, conducted a U-turn, and returned to the corner of Natural Bridge Rd. and Hamilton Ave. to investigate the situation further. Officer Schaffer explained that he was aware of reports of "people stealing supplies and equipment" from the Goody Goody Diner renovation project.[1]  [Tr. at 14]

Officer Ortinau parked the police vehicle at the corner and the officers exited. Two of the individuals stayed crouched near the air conditioning unit, one person ran away, and another person, later identified as Defendant Hayes, walked toward Natural Bridge. Officer Schaffer engaged Hayes while Officer Ortinau addressed the two people who remained near the air conditioner. Officer Schaffer explained that, for safety reasons, nobody chased the person who fled the scene.

Officer Schaffer indicated that Hayes was generally cooperative at the beginning of their interaction. Officer Schaffer testified that he told Hayes that he was going to conduct a pat down search for officer safety. Officer Schaffer offered several reasons for his concerns. He described the area as "a high crime, high drug area at night." (Tr. at 17) He noted that Hayes had

---

[1] Gov't Exhs. 1, 2a-2c were photographs of the area around the Goody Goody Diner and provided context to Officer Schaffer's testimony. Those photographs were taken during daytime hours—they did not depict the actual crime scene.

3

attempted to walk away from the group after the police arrived, and another individual ran away. Officer Schaffer also noted that Officer Ortinau had his back to Hayes at the time, so he had concerns for Officer Ortinau's safety as well.

Officer Schaffer testified that it was his practice to begin a pat down search by asking "Do you have anything on you that will poke me, prick me, or stick me?" Officer Schaffer explained that, "[i]n areas with high crime and high drug use, it's pretty common [for] people [to be] stuck with needles," and that "[g]enerally speaking, people are honest about them." (Tr. at 18) At this point, Hayes had not been arrested or placed in handcuffs, and Officer Schaffer had not administered any Miranda warnings to Hayes. Officer Schaffer testified that, in response to his question about things that could poke, prick, or stick him, Hayes stated, "I have a pistol in my waistband, I don't want you to shoot me." (Tr. at 19).

Upon hearing Hayes' statement, Officer Schaffer placed Hayes in handcuffs (with Hayes' hands behind his back) and conducted the pat down. Officer Schaffer did not find any weapon and told Hayes he could not find a gun. Officer Schaffer explained that Hayes was able to lift up his shirt from behind and nodded to show the officer where the gun was located. Officer Schaffer located and retrieved a .38 caliber revolver between Hayes' belt and waistband. The gun was loaded with five rounds. (See Gov't Exhs. 3-4)

Officer Schaffer secured the gun in the patrol car and conducted a computer inquiry of Hayes. The inquiry indicated that Hayes had a prior felony conviction. As such, Officer Schaffer advised Hayes that he was being arrested. Officer Hayes thereafter administered Miranda warnings to Hayes, which he read from a card.

Officer Schaffer testified that, after he advised Hayes that he was being arrested, Hayes' demeanor changed. He described Hayes as angry, distraught, downtrodden, and upset. (See Tr.

4

at 23, 35)  Officer Schaffer testified that, prior to arresting Hayes, Hayes was nice and pleasant. Officer Schaffer testified that he did not ask Hayes any questions, but after he advised Hayes that he was being arrested for the gun, Hayes stated "if you lived in this neighborhood, you would want a gun on you, too."  (Tr. at 23)

Officer Schaffer testified that Officer Ortinau wrote the report of the incident and he (Officer Schaffer) worked on the paperwork to take the matter to the Circuit Attorney's Office.

Additional findings of fact are included in the discussion below.

## DISCUSSION, CONCLUSIONS OF LAW, AND RECOMMENDATION

### I.     Summary of Issues Raised

Hayes asks the Court to suppress any statements he made to the police on September 10, 2019, following the incident near the Goody Goody Diner.  Hayes also asks the Court to suppress the firearm seized from his waistband.  In his motion, Hayes suggests that his statements were taken from him in violation of his Miranda rights.

The government counters that the evidence and statements taken from Hayes were obtained as a result of a lawful Terry stop because Hayes was observed trespassing during the early morning hours at the Goody Goody Diner.  The government contends that Hayes' first statement about a gun was made in response to a question related to officer safety and, therefore, not subject to Miranda. The government contends that Hayes' second statement about a gun was spontaneous, and not in response to any official questioning.

### II.    Initial Encounter

The first issue to resolve is whether the police lawfully stopped Hayes on the evening of September 10, 2019.

Police officers may briefly detain an individual for an investigative purpose when they

5

have a reasonable suspicion that "criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). "[A] Terry stop is justified only when the officer points to specific and articulable facts which, taken together with rational inferences from those facts, reasonable warrant that intrusion." United States v. Harvey, -- F.3d --, 2021 WL 2385810 at *2 (8th Cir. June 11, 2021) (citations and internal quotations omitted); see also United States v. Roberts, 787 F.3d 1204, 1209 (8th Cir. 2015). "The concept of reasonable suspicion is not 'readily, or even usefully, reduced to a neat set of legal rules.'" United States v. Quinn, 812 F.3d 694, 697 (8th Cir. 2016) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). "Reasonable suspicion must be supported by more than a 'mere hunch,' but 'the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard.'" Roberts, 787 F.3d at 1209 (quoting United States v. Arvizu, 534 U.S. 266, 274 (2002)). A reviewing court considers the totality of the circumstances. See id. In assessing the reasonableness of the suspicion, officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." Arvizu, 534 U.S. at 273 (internal quotations and citation omitted). The Court may also consider "[s]ituational factors including the time of day or night and the location of the suspect parties." Roberts, 787 F.3d at 1209 (internal quotations and citations omitted). "[E]ven 'a series of acts that appear innocent, when viewed separately, may warrant further investigation when viewed together.'" United States v. Gonzalez, 781 F.3d 422, 428 (8th Cir.) (quoting United States v. Weaver, 966 F.2d 391, 394 (8th Cir. 1992)), cert. denied, 136 S. Ct. 139 (2015). See also Quinn, 812 F.3d at 698 (explaining that totality of the circumstances standard precludes courts from engaging in a "divide-and-conquer" analysis of each factor separately) (citing cases).

6

The undersigned credits Officer Schaffer's testimony regarding the facts and circumstances concerning his encounter with Hayes.  Officer Schaffer explained, for example, that Officer Ortinau noticed four individuals trespassing near an air conditioning unit on the side of the Goody Goody Diner.  Officer Schaffer was aware that the diner was being renovated and that there were reports of thefts associated with that renovation.  Officer Schaffer also testified that it was about 2:00 a.m., and that it was a high crime, high drug area at night.  When the officers stopped to investigate, two of the people remained crouched near the air conditioning unit, one person fled, and Hayes walked toward Officer Schaffer.  The undersigned finds these facts provided Officers Schaffer and Ortinau with reasonable, articulable suspicion that criminal activity may be afoot.  And in these particular circumstances, Officer Schaffer also had a reasonable and objective basis to conduct a brief pat down search of Hayes at the outset of their encounter.  See United States v. Slater, 979 F.3d 626, 629 (8th Cir. 2020) ("Under Terry, both the stop and the frisk for weapons during the stop must be supported by reasonable suspicion.") (citation omitted).

Accordingly, the undersigned recommends that the Court deny Hayes' Motion to Suppress to the extent he argues that the police lacked a reasonable suspicion to briefly detain him and investigate his presence at the Goody Goody Diner at 2:00 a.m.

### III.   Hayes' Statements

#### A.   Legal Principles – Custodial Statements

Statements made to law enforcement officers during custodial interrogation are normally subject to the protections and procedures identified in Miranda v. Arizona, 384 U.S. 436, 477-78 (1966).  See United States v. LeBrun, 363 F.3d 715, 720 (8th Cir. 2004) (en banc).  "Custodial interrogation means questioning initiated by law enforcement officers after a person has been

7

taken into custody ….” Illinois v. Perkins, 496 U.S. 292, 296 (1990) (citation and quotation omitted). Miranda warnings are required when a suspect is both in custody and subjected to official questioning. See LeBrun, 363 F.3d at 720. Even if a suspect is in custody, however, a suspect's spontaneous statements which are not made in response to interrogation are not subject to Miranda. See United States v. Bailey, 831 F.3d 1035, 1038 (8th Cir. 2016) (citation omitted).

Police interrogation can take forms other than express questioning. Rather, "properly understood, [interrogation] involves either 'express questioning or its functional equivalent.'" United States v. Wipf, 397 F.3d 677, 685 (8th Cir. 2005) (quoting Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980)). "Accordingly, interrogation encompasses 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" Id. (quoting Innis, 446 U.S. at 301). "But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." Innis, 446 U.S. at 301-02 (emphasis in original, footnote omitted). Determining "[w]hether a particular statement constitutes an interrogation depends upon the circumstances of each case …." United States v. Hull, 419 F.3d 762, 767 (8th Cir. 2005).

    **B.**    **Hayes' First Statement**

Hayes' first statement was when he advised Officer Schaffer that he had a firearm on his person prior to the pat down search. It is not disputed that Hayes made his statement in response to a question from Officer Schaffer and Hayes had not yet received any Miranda warnings. The undersigned does not interpret the government's argument as suggesting that Hayes was not in

custody at the time.

Not every question posed by the police to a detained person amounts to interrogation for Miranda purposes. For example, Miranda warnings are not required for "[g]eneral on-the-scene questioning as to facts surrounding a crime." United States v. Klein, 13 F.3d 1182, 1184 (8th Cir. 1994) (citing Miranda, 384 U.S. at 477-78). And a "[public safety] exception permits a suspect's answer to a question to be admitted into evidence even if he had not first been informed of his Miranda rights so long as the purpose of the officer's question was to ensure public safety, not merely to elicit evidence." United States v. Jones, 842 F.3d 1077, 1082 (8th Cir. 2016) (citation omitted). This concern for public safety extends to a police officer's own safety. See United States v. Becerra, 958 F.3d 725, 729-30 (8th Cir. 2020) (finding no Miranda violation "because 'police officers [may] ask questions reasonably prompted by a concern for … public safety,' even when the potential threat is to the officers themselves") (quoting New York v. Quarles, 467 U.S. 649, 655 (1984)), cert. denied, 141 S. Ct. 1081 (2021). These types of concerns are routinely present during traffic stops, arrests, and searches. See United States v. Thompson, 976 F.3d 815, 824 (8th Cir. 2020) (in traffic stop context, affirming finding that questions about whether there was a gun or anything illegal in the car was admissible under the public safety exception); United States v. Noonan, 745 F.3d 934, 938 (8th Cir. 2014) (noting questions flowing from concerns about firearms and drug paraphernalia during an arrest or search fall within the public safety exception). Courts apply "[a]n objective standard … to decide whether an officer's question was meant to aid public safety." Jones, 842 F.3d at 1082.

The undersigned finds that Officer Schaffer's question about whether Hayes had anything that might poke, prick, or stick him was clearly meant to aid public safety, namely Officer Schaffer's own safety, and not to elicit any incriminating statements. Officer Schaffer testified

9

that, based on his knowledge and experience, it was his practice to ask that question to avoid an accidental needle stick.  It was about 2 a.m., in a high crime and high drug area of St. Louis.  And the officers were investigating potential theft and trespass.  Officer Schaffer had not even handcuffed Hayes at that point, strongly suggesting that his concerns were for needle safety only.  None of the facts and circumstances suggest that such a routine safety question would be intended to elicit an incriminating statement about a gun.

The undersigned finds that the public safety exception applies and, therefore, recommends that the Court deny Hayes' request to suppress his statement to Officer Schaffer advising that he had a firearm on his person.

### C. Hayes' Second Statement

After being advised that he was being arrested for the firearm, Hayes stated, "[y]ou know, if you lived in this neighborhood, you would want a gun on you, too."  (Tr. at 23)  As noted above, Miranda only applies to custodial interrogation.  There is no dispute that Hayes was in custody and subject to formal arrest.  Hayes' second statement need not be suppressed, regardless of whether Miranda warnings were given at that point, because it was not the product of any interrogation.

"Interrogation occurs only when there is express police question or its 'functional equivalent,' which means 'words or actions on the part of the police … that the police should know are reasonably likely to elicit an incriminating response from the suspect.'"  Bailey, 831 F.3d at 1038 (8th Cir. 2016) (quoting Innis, 446 U.S. at 300-01).  In this case, Officer Schaffer merely advised Hayes that he was being arrested for the firearm.  Officer Schaffer could not reasonably have anticipated that Hayes would respond as he did.  Therefore, Hayes' second statement was spontaneous; it was not in response to any form of interrogation.

The undersigned recommends that the Court deny Hayes' request to suppress his second statement.

## IV.     Seizure of the Firearm

Finally, based on the foregoing analysis regarding the Terry stop and Hayes' first statement to Officer Schaffer, Hayes has not identified any reason that would support suppression of the .38 caliber pistol seized from his waistband.  The undersigned recommends that the Court deny his Motion to Suppress, to the extent it asks the Court to suppress the firearm.

## RECOMMENDATION

Accordingly,

**IT IS HEREBY RECOMMENDED** that Hayes' Motion to Suppress Statements and Evidence [ECF No. 22] be DENIED.

The parties are advised that they have fourteen (14) days in which to file written objections to the foregoing Report and Recommendation unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).  see also 28 U.S.C. § 636(b)(1)(A), Fed. R. Crim. P. 59(a).

This matter will be set by further order of the Court, before the Honorable Henry E. Autrey, United States District Judge.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this   22nd   day of June, 2021.